**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA**

-vs-                                                                                          Case No.  6:11-cr-35-PCF-GJK

**THADDEUS JOHNSON**
_____

### ORDER

This case comes before the Court on the following:

1.  Motion to Suppress Evidence by Thaddeus Johnson (Doc. No. 27, filed Apr. 18, 2011); and

2.  Response to Defendant's Motion to Suppress by United States of America (Doc. No. 39, filed Apr. 27, 2011).

**Background**

On February 2, 2011, a federal grand jury returned a four-count indictment against Thaddeus Johnson ("Defendant").  (Doc. No. 1.)  Count I of the indictment charges the Defendant with knowingly and intentionally manufacturing, possessing with intent to manufacture, and possessing with intent to distribute a mixture and substance containing a detectable amount of marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vii), and 18 U.S.C. § 2.  (*Id*. at 1.)  Count II charges the Defendant with knowingly possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) and (2).  (*Id*. at 2.)  Count III charges the Defendant with having been convicted of a crime punishable by imprisonment for a term exceeding one year and knowingly possessing a firearm in violation of 18 U.S.C. § 922(g)(1), § 924(a)(2), and § 924(e)(1) and (2). (*Id.* at 3-4.)  Finally, Count IV charges the Defendant with knowingly possessing a machine gun in violation of 18 U.S.C. § 922(o) and § 924(a)(2).  (*Id.* at 4.)

On April 27, 2011, Defendant filed the present Motion to Suppress Evidence arguing that the evidence obtained by law enforcement agents on the day of his arrest, as well as the evidence stemming therefrom, should be suppressed because the law enforcement agents conducted a warrantless search of the premises. The Government filed a Response to Defendant's Motion to Suppress on April 27, 2011. (Doc. No. 39.) On May 2, 2011, the Court held an evidentiary hearing on the Motion to Suppress Evidence attended by counsel for the Government, counsel for the Defendant, and the Defendant. (Doc. No. 43.)

**Findings of Fact**

The Court makes the following findings of fact and credibility determinations after considering the evidence and listening to and observing the witnesses as they testified.

On October 18, 2010, the Brevard County Sheriff's Office ("BCSO") Special Investigations Unit received an anonymous tip from the Titusville Police Department's Text-A-Tip program. The tip stated that the Defendant was "growing weed in a shed behind his mobile home @ 2589 Wily Ave Mims." The tip further provided that the Defendant and another individual, referred to as Watkins, "has guns w/him and in his [home]. Watkins says he can't get caught." Finally, the tip described a second "weed house" on Mitchell Street in Mims, Florida with a privacy fence and trained dogs guarding the property.

On October 19, 2010, BCSO Agent Adam Steuerwald performed surveillance on 2589 Wiley Road, Mims, Florida. Agent Steuerwald observed a small shed behind the residence consistent with the description provided in the anonymous tip. On October 20, 2010, Agent Steuerwald performed surveillance on a residence located on Mitchell Street in Mims, Florida. This surveillance confirmed the description of the residence provided in the tip, including the privacy fence and the guard dogs.

On October 21, 2010, Agent Steuerwald again performed surveillance at 2589 Wiley Road. Agent Steuerwald observed three vehicles arrive at the residence and leave within a one hour time period.

On October 25, 2010, Agent Steuerwald and BCSO Agents Todd Beuer and Kraig Hupfer went to 2589 Wiley Road and determined that a property adjacent to the 2589 Wiley Road property was vacant. The vacant property was separated from the 2589 Wiley Road property by a chain link fence. The agents walked to the rear of the vacant property and observed a shed on the 2589 Wiley Road property located approximately five to six feet away from the agents' position as they stood on the vacant property. The agents observed that the shed was approximately 10 feet by 20 feet in size and contained two running air conditioning units. All three of the agents also detected the odor of fresh marijuana emanating from the shed.

After observing the shed, the agents left the vacant lot and contacted their supervisor, Sergeant Thomas. Sergeant Thomas agreed that the agents should conduct a "knock and talk" at 2589 Wiley Road in order to avoid the full search warrant procedure and in the hope that the Defendant would cooperate. The agents knew from prior experience that the area in Mims where Defendant resides is a "close knit" neighborhood with houses located near each other, and execution of a search warrant at one address quickly would be reported through the neighborhood, likely resulting in destruction of evidence at the other locations the agents believed were involved in controlled substances violations.[1] At approximately 4:30 pm on October 25, 2009, Agents Steuerwald, Beuer, and Hupfer in plain clothes and Deputy Jesse Holton in uniform set out to perform the knock and talk by walking

---

[1] The agents were investigating information related to controlled substances at two other locations, one on Mitchell Street and one on Myrtle Street, both of which were in close proximity to Defendant's Wiley Street address.

up the driveway towards the front of the Defendant's residence.[2] However, before they approached the front door, Agent Beuer went around to the west side of the residence to observe the premises for officer safety. When Agent Steuerwald, Agent Hupfer, and Deputy Holton reached the front porch, they observed that the front door was open but the screen door was closed and locked. The agents knocked on the door, and two children answered. After the agents identified themselves and asked the children if a parent was home, the children went back into the house. In a few minutes Mary Johnson ("Mrs. Johnson"), the Defendant's wife, came to the door. The agents identified themselves and asked Mrs. Johnson if the Defendant was at home. Mrs. Johnson stated that the Defendant was in the back, and she went back into the residence to locate him. Mrs. Johnson testified at the hearing that she did not know where the Defendant was and that she went to her room to telephone him.

Meanwhile, Agent Beuer, who had entered the west side of the residence through a large opening in a wooden privacy fence so he could see both the entrance to the shed and the back door of the residence,[3] observed the Defendant coming out of the shed from which the smell of fresh marijuana emanated. Agent Beuer pointed a taser at the Defendant and ordered him to the ground. Defendant complied with Agent Beuer's commands and dropped to the ground near the entrance to the shed. At this point, the shed door remained partially opened. Agent Beuer asked the Defendant if there was anyone else in the shed, but the Defendant did not respond. Agent Beuer then looked in through the partially open shed door to ensure that no one else was in the shed. Seeing no one present in the area of the shed visible to him from the shed's doorway, Agent Beuer closed the shed door.

---

[2] The agents did not have to open or unlock a gate or a fence, or navigate around any other obstruction in approaching the front of the residence.

[3] A dog was located on the property. It was chained and barked aggressively at Agent Beuer but did not attack him.

While Agent Steuerwald, Agent Hupfer, and Deputy Holton were standing at the front door waiting for Mrs. Johnson to locate the Defendant, they heard Agent Beuer shouting and ran around to the west side of the residence. Agent Hupfer immediately assisted Agent Beuer in detaining and handcuffing the Defendant. As the agents were detaining the Defendant, Mrs. Johnson was crying and yelling to the Defendant from the rear of the residence, directing him in words to the effect: "You need to tell the officers about Keleon Watkins," and "Tell them it's not your fault."[4]

After the defendant was secured, the agents escorted him to the front of the residence. Agent Hupfer remained with the Defendant, Mrs. Johnson, and the children at the front of the residence while Agent Steuerwald left to obtain the search warrant. The Defendant made several statements to Agent Hupfer during the time he was detained at the residence. Specifically, in response to Agent Hupfer's inquiry into whether the Defendant had any weapons, the Defendant stated that there were rifles in the home. Later, while the Defendant was still detained at the front of his residence awaiting the arrival of the search warrant, he remarked to Agent Hupfer that the "machine gun [is] probably gonna hurt me, huh?" Defendant was not read his Miranda rights during this initial detention at his home.

The agents did not execute a search of the residence, the shed, or any of the vehicles on the property before the search warrant was obtained. However, Mrs. Johnson asked Agent Beuer to enter the residence to obtain one of the children's school books and clothing so that the child could leave the scene. Agent Beuer did as requested, escorting the child into the house, observing her as she obtained her belongings, and leaving with her. No search of the premises was conducted at this time,

---

[4] At trial Mrs. Johnson contended that she did not know what Defendant did in the shed.

and no other agents entered the residence prior to the arrival of the search warrant. The Court finds the testimony of Mrs. Johnson and Jwaneisha Foster to the contrary lacking in credibility.[5]

At approximately 7:00 pm, Agent Steuerwald returned to 2589 Wiley Road with a search warrant. The agents then searched the shed, the house, and the three cars located on the premises. The search led to the discovery of over 100 marijuana plants, five rifles, one machine gun, ammunition, cocaine, currency, scales, receipts from the Florida Power and Light Company, receipts from hydroponics stores, and an insulation board.

The affidavit in support of the search warrant contained information relating to the anonymous tip received by the Titusville Police Department. The affidavit also referenced Agents Steuerwald, Beuer, and Hupfer's observations of the shed located on the 2589 Wiley Road property from the adjacent vacant property, including the two continuously running air conditioning units and the odor of fresh cannabis emanating from the shed. Finally, the affidavit included information related to the the knock and talk conducted at the 2589 Wiley Road residence on October 25, 2010. Specifically, the affidavit provided: "Agent Beuer stated that when Thaddeus walked from the shed, he could smell the odor of fresh cannabis coming from the shed."

At approximately 10:00 pm on October 25, 2010, over five hours after his initial detention at Wiley Street, Defendant was transported approximately seven miles to the Brevard

---

[5] The Court also finds unreliable and rejects Defendant's testimony that one of the agents may have come through the house behind Mrs. Johnson when she came onto the back deck. Defendant initially appeared uncertain as he gave this testimony. At the time Mrs. Johnson came to the back deck, Defendant was being handcuffed and detained while Mrs. Johnson was urging him to tell the agents about Keleon's activities. This may explain why Defendant's observation is inaccurate. In any event, the agents testified unequivocally that they did not enter the residence or the shed, except for Agent Beuer's assistance to a child at Mrs. Johnson's request and his look through the open doorway to the shed as described above, and the Court finds their testimony credible.

County Sheriff's North Precinct Interview Room. At this point, Agent Vince Ziccardi read Defendant his Miranda rights which Defendant acknowledged he understood. Agents Ziccardi and Steuerwald then interviewed the Defendant. The interview was recorded on an audio tape, and a transcript of the interview has been prepared. On November 10, 2010, Defendant was released on bond.

On February 4, 2011, Defendant was arrested at his 2589 Wiley Road residence pursuant to a federal indictment. Defendant was transported to the Titusville Police Department, some thirteen miles away, where he was read his Miranda rights and interviewed by Special Agents Patrick Campbell and Scott Soriero. The February 4, 2011 interview was also recorded on an audio tape, and a transcript of the interview is available.

Defendant had been convicted of six felonies prior to the events described above.

## Analysis

The Fourth Amendment serves as a general proscription against warrantless searches and requires that search warrants be based on probable cause. U.S. Const. amend. IV. The Supreme Court has referred to probable cause as "a fluid concept-turning on the assessment of probabilities in particular factual contexts - not readily, or even usefully reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). What is required in assessing probable cause is "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. at 238; *see also United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002). The Fourth Amendment requirement of probable cause for a search warrant protects the interests of individuals in their homes, properties, and possessions against unjustified police intrusion. *Steagald v. United States*, 451 U.S. 204, 213 (1981).

"It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 455 U.S. 573, 586 (1980). "The Supreme Court, however, has recognized that circumstances sometimes preclude the obtaining of a warrant and therefore has allowed warrantless searches and seizures of a residence where both probable cause and exigent circumstances exist." *United States v. Burgos*, 720 F.2d 1520, 1525 (11th Cir. 1983) (citing *United States v. Santana*, 427 U.S. 38, 42-43 (1976)).

Items seized in violation of the Fourth Amendment may be excluded from evidence in a criminal proceeding against a person with standing to object to the search. *Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963). Notwithstanding this general principle, the Supreme Court has established a "good faith exception" to the exclusionary rule. *United States v. Leon*, 468 U.S. 897, 922 (1984). The "good faith exception" provides that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance on a search warrant issued by a neutral and detached magistrate that is ultimately found to be unsupported by probable cause.[6] *Id*. However, where evidence is seized pursuant to a search warrant issued in reliance on information obtained during a prior illegal warrantless search, the good faith exception does not apply. *United States v. McGough*, 412 F.3d 1232, 1236-40 (11th Cir. 2005). On the other hand, where certain evidence is claimed to have been tainted, but that information is not included in a search warrant

---

[6] The "good faith exception" does not apply in four limited situations: (1) where the magistrate or judge in issuing a warrant was misled by information that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his detached and neutral judicial role; (3) where the affidavit supporting the warrant is so lacking in indica of probable cause as to render official belief in its existence entirely unreasonable; and (4) where a warrant is so facially deficient that the executing officers cannot reasonably presume that it is valid. *Martin*, 297 F.3d at 1313 (citing *Leon*, 468 U.S. at 923).

application and affidavit, the warrant purges any taint, and the evidence is admissible against the defendant.  *United States v. Davis*, 313 F.3d 1300, 1302-04 (11th Cir. 2002).  Similarly, despite the establishment of "a primary Fourth Amendment violation," evidence will not be excluded where it is obtained "by means sufficiently distinguishable to be purged of the primary taint."  *United States v. Delancy*, 502 F.3d 1297, 1309 (11th Cir. 2007) (quoting *Wong Sun*, 371 U.S. at 488).

In the present case, Defendant contends that although there was sufficient probable cause to obtain a  search warrant, the agents failed to obtain a warrant and instead engaged in a warrantless, physical search of the house and shed.[7]  Defendant maintains that the illegal evidence obtained from this search tainted the subsequently issued search warrant and therefore all evidence seized pursuant to the search warrant should be excluded as "fruit of the poisonous tree."   In response, the Government contends that the agents engaged in a permissible "knock and talk" at the Wiley Road residence and that the search warrant did not rely on any evidence gathered from the allegedly warrantless search.

Agents Steuerwald, Beuer, and Hupfer testified that they did not participate in or observe any law enforcement agents conducting a search of the shed, the residence, or the vehicles on the 2589 Wiley Road property prior to the arrival of the search warrant.  These agents also testified that they did not themselves conduct a search during the knock and talk.  BCSO Agent Christopher Williams, who arrived at 2589 Wiley Road at approximately 6:00 pm on October 25, 2010 to execute the search warrant, similarly testified that he did not observe any law enforcement agents conducting a search

---

[7] Defendant has not objected to the scope of the "knock and talk."  Instead Defendant argues that the "knock and talk" was a pretext for an  illegal search and seizure of the residence and the shed which he contends actually and physically occurred prior to the obtaining of the search warrant.

prior to the arrival of the search warrant at 7:00 pm. The Court finds the agents' testimony on this issue to be credible.[8] While Agent Beuer did admit to looking into the shed through a partially open door and testified that he entered the residence at Mrs. Johnson's request to obtain books and clothing for one of the children, neither of these entries amounted to a warrantless search of the premises.[9] Accordingly, the Court concludes that the law enforcement agents did not engage in a warrantless search of the residence and shed prior to obtaining the search warrant as suggested by the Defendant.

Even if the Court were to conclude that the agents engaged in a warrantless search of the premises, the warrant itself was not based on any information obtained solely through the allegedly warrantless search. Instead, the search warrant was based on information originally obtained from the anonymous tip and the agents' observations of the shed from an adjacent vacant property.[10]

---

[8] Mrs. Johnson testified that two of the agents searched the master bedroom prior to the arrival of the search warrant. Mrs. Johnson's testimony is directly contradicted by that of Agent Williams, whom the Court finds to be credible. Agent Williams was assigned to search the master bedroom. Agent Williams testified that when he entered the residence to execute the search warrant, it did not appear to have been searched. Agent Williams' testimony is further supported by that of Agents Steuerwald, Beuer, and Hupfer. In addition, Mrs. Johnson testified that she was aware of a pistol gripped shotgun standing up by her bed which is shown in the photographs. The Court does not find Mrs. Johnson's testimony, that two agents searched the master bedroom without securing a pistol gripped shotgun standing in plain sight, to be credible. Further, Mrs. Johnson's testimony is not consistent with the testimony of her daughter, Jwaneisha Foster. Foster testified that she observed one agent in the kitchen and one agent in the living room. She did not testify that any agents entered the bedroom. In sum, having observed the witnesses in court as they testified and considered the evidence in the record, the Court finds that the testimony of Mrs. Johnson and Jwaneisha Foster on this issue is not credible.

[9] Jwaneisha Foster testified that one of the agents entered the shed, knocked down the blue curtain located in the shed, and starting taking pictures with an I-phone. The Court does not find this testimony to be credible.

[10] The Defendant concedes that this information was sufficient to establish probable cause for at least a search of the shed.

Because the information contained in the search warrant affidavit was based on information obtained from a source independent of the allegedly warrantless search, the evidence secured during its execution is admissible against the defendant. *See, e.g., United States v. Glinton*, 154 F.3d 1245, 1254-55 (11th Cir. 1998) ("However, if the search warrant was obtained based upon information from an independent source, then the warrantless entry, even though illegal, would not require the exclusion of evidence.") (internal citations omitted).

Moreover, while the search warrant affidavit states that when the Defendant walked from the shed, Agent Beuer "could smell the odor of fresh cannabis coming from the shed," the affidavit also included information relating to Agents Beuer, Steuerwald, and Hupfer's previous observations from adjacent vacant property, including their observation of the smell of fresh cannabis emanating from the shed and the presence of two continuously running air conditioning units on this structure which was approximately 10 feet by 20 feet in size. The affidavit also provided information relating to the anonymous tip. Thus, even if the Court were to find that Agent Beuer's observations as Defendant walked from the shed were derived from a warrantless search of the premises, the search warrant would still be valid because it is supported by sufficient untainted evidence to establish probable cause. *United States v. Whaley*, 779 F.2d 585 589 n.7 (11th Cir. 1986) (finding that "[w]hen some of the evidence in an affidavit is found to have violated the Fourth Amendment, 'if sufficient untainted evidence was present in the affidavit to establish probable cause, the warrant was valid.'") (quoting *United States v. Karo*, 468 U.S. 705, 719 (1984)); *United States v. Free*, 254 F. App'x 765, 768 ("Even assuming . . . [the] protective sweep violated the [defendant's] Fourth Amendment rights, the warrant for the subsequent search was still valid because probable cause for the search was established by the affidavit independent of its reference to the small amount of marijuana discovered

during the protective sweep."); *United States v. Davis*, 313 F.3d 1300, 1302-04 (11th Cir. 2002) (finding that because the warrant was supported by probable cause even if the tainted information was removed, the evidence recovered should not be suppressed).

Finally, Defendant argues that "[b]ecause the search of the premises was illegal, the defendant's inculpatory statements are tainted and not admissible against him." (Doc. No. 27 at 7.) Defendant maintains that "[t]he illegal search led directly to the admissions made by the defendant, rendering those statements inadmissible as well." (*Id.* at 8.) At the suppression hearing, Defendant argued that his statements must be suppressed because there was an actual physical search of the residence and the shed by the agents before the search warrant was obtained. However, as discussed previously, the agents did not conduct a search of the house or the shed prior to the arrival of the search warrant. Moreover, even if the Court were to conclude that the agents engaged in a warrantless physical search of the house or the shed or both prior to the arrival of the search warrant, the warrant would still be valid because it is supported by sufficient untainted evidence to establish probable cause. Accordingly, Defendant's inculpatory statements were not tainted by an illegal search of the residence or the shed as suggested by the Defendant.

## Conclusion

Based on the foregoing, the Motion to Suppress Evidence by Thaddeus Johnson (Doc. No. 27, filed Apr. 18, 2011) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on this ___3rd____ day of May, 2011.

*[signature: Patricia C. Fawsett]*

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to: